UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ANDREW WHEELER,<br><br>　　　　Defendant. | Case No. 15-cv-01165-HSG<br><br>**ORDER DISMISSING MOTION TO ENFORCE JUDGMENT**<br><br>Re: Dkt. No. 54 |

Pending before the Court is Plaintiffs' motion to enforce the Court's summary judgment order. Dkt. No. 54. For the reasons articulated below, the Court finds that it does not have subject matter jurisdiction to entertain this motion and thus dismisses it.

## I. BACKGROUND

### A. Prior Litigation

Plaintiffs Sierra Club and California Communities Against Toxics ("Plaintiffs") originally brought this action against Defendant Gina McCarthy ("Defendant"), in her official capacity as Administrator of the Environmental Protection Agency ("EPA"), in March 2015 under the citizen-suit provision of the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a).[1] *See* Complaint ("Compl."), Dkt. No. 1. Plaintiffs sought (1) a declaratory judgment stating that the EPA had failed to comply with its statutory obligations under 42 U.S.C. Sections 7412(d)(6) and 7412(f)(2) with respect to the source categories of pulp mills and nutritional yeast manufacturers, and (2) injunctive relief mandating that the EPA either promulgate revised emissions standards for those source categories or issue a final determination that such standards were not required. Compl. ¶ 72. Plaintiffs and

---

[1] McCarthy was succeeded as Administrator of the EPA by Scott Pruitt, who has since been succeeded by Acting Director Andrew Wheeler. Under Federal Rule of Civil Procedure 25(d), a public officer's successor is automatically substituted as a party.

Defendant filed cross-motions for summary judgment, agreeing that the EPA had failed to fulfill certain mandatory rulemaking duties under the CAA, but disputing how long the EPA should be given to comply with its statutory obligations. *See* Plaintiff's Motion for Summary Judgment, Dkt. No. 27; EPA's Opposition, Dkt. No. 35.

The Court entered its summary judgment order on March 15, 2016. *See* Order Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment ("Order"), Dkt. No. 41. As relevant here:

> (3) The Court **ORDERS** Defendant, in her official capacity as Administrator of the EPA, to review and either to revise the emission standards or issue a final determination that such revision is not necessary for (a) Chemical Recovery Combustion Sources at Kraft, Soda, Sulfite, and Stand-Alone Semichemical Pulp Mills and (b) Manufacturing of Nutritional Yeast by October 1, 2017, under 42 U.S.C. 7412(d)(6); and
>
> (4) The Court **ORDERS** Defendant, in her official capacity as Administrator of the EPA, to review and either to revise the emission standards or issue a final determination that such revision is not necessary for (a) Chemical Recovery Combustion Sources at Kraft, Soda, Sulfite, and Stand-Alone Semichemical Pulp Mills and (b) Manufacturing of Nutritional Yeast by October 1, 2017, under 42 U.S.C. § 7412(f)(2).

Order at 11–12.

Effective October 11, 2017, the EPA promulgated National Emissions Standards for Hazardous Air Pollutants for Chemical Recovery Combustion Sources at Kraft, Soda, Sulfite, and Stand-Alone Semichemical Pulp Mills. *See* 82 Fed. Reg. 47,238 ("the Final Rule"). In the Final Rule, the EPA stated:

> We determined that there are developments in practices, processes, and control technologies that warrant revisions to the [emissions standards] for this source category. Therefore, to satisfy the requirements of [section 7412(d)(6)], we are revising the [standards] as follows:
>
> - Revising the opacity monitoring allowance for all recovery furnaces equipped with ESPs from 6 percent to 2 percent;
> - Revising the opacity monitoring allowance for all lime kilns equipped with ESPs from 6 percent to 3 percent;
> - Adding a requirement for recovery furnaces and lime kilns equipped with ESPs to maintain proper operation of the ESP AVC;
> - Adding the aforementioned ESP requirement and wet scrubber parameter monitoring for emission units equipped with an ESP followed by a wet scrubber; and
> - Providing alternative monitoring, specifically scrubber fan

2

> amperage, as an alternative to pressure drop measurement, for SDT dynamic scrubbers operating at ambient pressure and low-pressure entrainment scrubbers on SDTs where the fan speed does not vary.

Final Rule at 47,331.[2] In addition, in response to a commenter's analysis, the EPA stated that it

> acknowledges that standards for certain combinations of pollutants and processes in [this] source category have not been promulgated according to [section 7412](d)(2) and (3). We agree that the EPA does not have any obligation to expand the scope of the existing standards under [section 7412](d)(6), and we do not look to [section 7412](d)(6) for authority to set additional standards within a source category. The authority to set additional standards within a source category comes from [section 7412](d)(2) and (3). Though the EPA has discretion to develop standards under [section 7412](d)(2) and (3) for previously unregulated pollutants at the same time as the Agency completes the [section 7412](d)(6) review, nothing in [section 7412](d)(6) expressly requires the EPA to do so as part of that review. The compressed schedule for this rulemaking, due to the court-ordered deadline, did not make it reasonable to appropriately evaluate new standards for unregulated pollutants and processes. . . . The EPA is not taking any action at this time with respect to the unregulated pollutants or processes, though the EPA might choose to do so in the future after assembling the data and information needed to conduct the [section 7412](d)(2) and (3) analyses.

Final Rule at 47,335.

### B. Plaintiff's Motion to Enforce the Judgment

Plaintiffs filed this motion to enforce on April 10, 2018. *See* Dkt. No. 54 ("Mot."). Defendant responded on June 7, *see* Dkt. No. 57 ("Opp."), and Plaintiffs replied on June 28, *see* Dkt. No. 58 ("Reply"). The Court heard arguments on the motion and took the matter under submission on July 12. *See* Dkt. No. 59.

Plaintiffs do not appear to dispute that Defendant has complied with the Court's order with respect to reviewing the emissions standards under section 7412(f)(2).[3] However, Plaintiffs claim

---

[2] The Final Rule cites to sections of the Clean Air Act, while this Court will refer to sections of the CAA as codified in the United States Code. Section 112 of the CAA is codified at 42 U.S.C. § 7412.

[3] The Final Rule states that in the proposed rulemaking, which was published on December 30, 2016, the EPA "proposed no changes" pursuant to a review of the relevant risk under section 7412(f)(2). Final Rule at 47,331. The Final Rule "finaliz[ed the EPA's] proposed determination that risks from the source category are acceptable, considering all of the health information and facts evaluated, and also considering risk estimation uncertainty." *Id.* The Final Rule also finalized the "proposed determination that the current safety standards provide an ample margin of safety, as well as our finding regarding the absence of adverse environmental effects." *Id.* In short, the Final Rule did not "mak[e] any revisions to the existing standards under [section 7412(f)(2)]." *Id.*

3

that Defendant has failed to comply with the Court's directive to review the pulp mill standards under section 7412(d)(6). *See* Mot. at 1, 5. Plaintiffs assert that the EPA's Final Rule "include[s] no emission limits for many of the listed hazardous air pollutants that Pulp Mills emit," which "include mercury, hydrogen chloride, and hydrogen fluoride, as well as dioxins, benzene, formaldehyde, and other organic chemicals listed as hazardous air pollutants" in section 7412(b)(1). Mot. at 3. Plaintiffs ask "that the Court direct EPA to" comply with its 2016 order by "either: (1) within two (2) years, promulgating a final rule to revise its Pulp Mill Standards as 'necessary' under [section] 7412(d)(6); or (2) within six (6) months, issuing a final determination that no revisions to the Pulp Mills Standards are necessary under [section] 7412(d)(6)." Mot. at 1. Plaintiffs also request that the Court hold Defendant in civil contempt until the EPA complies with the Court's order. *Id.*

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and may only hear cases when authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376–78 (1994). The plaintiff bears the burden of establishing subject matter jurisdiction. *See Ass'n of Am. Med. Colls. v. U.S.*, 217 F.3d 770, 778–79 (9th Cir. 2000). When the court does not have subject matter jurisdiction, "the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotation omitted).

## III. DISCUSSION

Defendant contends that "this Court lacks subject matter jurisdiction to review the content and sufficiency of the [Final Rule], including whether it meets the requirements of the CAA." Opp. at 7. The Court agrees that it does not have subject matter jurisdiction and thus must dismiss the motion.

The citizen-suit provision of the CAA permits a litigant to "commence a civil action on his own behalf . . . against the [EPA] Administrator where there is an alleged failure of the Administrator to perform any act or duty under this chapter which is not discretionary." 42 U.S.C. § 7604(a)(2). District courts have jurisdiction "to enforce . . . an emission standard or limitation, or such an order" under the CAA, and "to compel . . . agency action unreasonably delayed,"

except as set forth in section 7607(b). *Id.* § 7604(a)(3). Section 7607(b)(1), in turn, provides that "[a] petition for review of the Administrator in promulgating . . . any emission standard or requirement under section 7412 of this title . . . or any other nationally applicable regulations . . . or final action taken[] by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia." A petition for review of "the Administrator's action in approving or promulgating . . . any order . . . under section 7412 of this title . . . which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit." *Id.*

"[J]urisdiction under [section 7607(b)(1)] is not established solely by the allegations on the face of a complaint; instead, [the section] channels review of final EPA action exclusively to the courts of appeals, *regardless of how the grounds for review are framed.*" *Cal. Dump Truck Owners Ass'n v. Nichols*, 784 F.3d 500, 506 (9th Cir. 2015) (quoting *Virginia v. United States*, 74 F.3d 517, 523 (4th Cir. 1996)) (internal quotation marks omitted) (emphasis in original). Framing a challenge to agency action in such a way that results in a litigant "circumvent[ing] direct review in the circuit court" as set forth in section 7607(b)(1) is not permissible. *See Cal. Dump Truck Owners Ass'n*, 784 F.3d at 506 (quoting *Virginia*, 74 F.3d at 522–23). A court must inquire into whether the claims challenge an EPA final action "as a practical matter." *Cal. Dump Truck Owners Ass'n*, 784 F.3d at 507.

Even though they frame their challenge as a motion to enforce the Court's prior judgment, Plaintiffs are attempting to do exactly what section 7607(b)(1) forbids: circumventing direct review in the circuit court. In revising the Final Rule, the EPA made the substantive determination that section 7412(d)(6) did not require it to revise the standards to encompass the hazardous air pollutants about which Plaintiffs are concerned. The relief that Plaintiffs seek "would require this Court to inquire into the sufficiency and propriety of EPA's final . . . decision." *See Medical Advocates for Healthy Air v. U.S. Environmental Protection Agency*, No. C 11-3515 SI, 2012 WL 710352, at *6 (N.D. Cal. Mar. 5, 2012); *cf. Sierra Club v. Ruckelshaus*, 602 F. Supp. 892, 901 (N.D. Cal. 1984) (finding EPA in contempt where it withdrew proposed regulations, which was "not one of the options afforded the EPA under the clear language of 42

5

1 U.S.C. § 7412 or" the court's prior order). Such an inquiry is forbidden by Section 7607(b)(1),
which mandates that petitions for review of emission standards promulgated under section 7412 be filed in the United States Court of Appeals for the District of Columbia. No doubt aware of this jurisdictional requirement, Plaintiffs have already filed such a petition. *See* Pet. for Review, *Crossett Concerned Citizens for Environmental Justice v. U.S. Environmental Protection Agency*, No. 17-1257 (D.C. Cir. Dec. 11, 2017). This parallel challenge contravenes the purpose of this rule, which "not only encourages the expeditious resolution of cases by avoiding duplicative review, but . . . also ensures that multiple actions are not simultaneously pending before multiple courts," *Izaak Walton League of Am. v. Johnson*, 400 F. Supp. 2d 38, 44 (D.D.C. 2005).

Because the "practical objective" of Plaintiffs' motion is to "nullify final actions of the EPA," *Cal. Dump Truck Owners Ass'n*, 784 F.3d at 506, under 42 U.S.C. § 7607(b)(1), this Court does not have subject matter jurisdiction to entertain the motion. *See also Virginia*, 74 F.3d at 522 (finding "district court is without jurisdiction in this case because review was available in the circuit court under [section 7607](b)(1) and that review is exclusive"). Accordingly, the Court **DISMISSES** the motion for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated: 11/27/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge